IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ROOSEVELT WASHINGTON,        §
        PLAINTIFF,        §
        §
V.        § CIVIL ACTION NO. 4:07-CV-770-Y
        §
MICHAEL J. ASTRUE,        §
COMMISSIONER OF SOCIAL SECURITY        §
        DEFENDANT.        §

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER

      This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of

the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

A.      STATEMENT OF THE CASE

      Plaintiff Roosevelt Washington brings this action for judicial review of a final decision of

the Commissioner of the Social Security Administration denying his claim for supplemental security

income or SSI benefits under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 405(g),

1383(c)(3). Washington applied for SSI benefits on December 9, 2003, alleging disability

commencing December 5, 2003. (Tr. 77). After his application was denied initially and on

reconsideration, Washington requested a hearing before an administrative law judge (ALJ), and ALJ

Larry Weber held a hearing on May 12, 2006. (Tr. 337). On August 24, 2006, the ALJ issued a

decision that Washington was not disabled for purposes of the Social Security Act. (Tr. 20-27). The Appeals Council denied Washington's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 4).

B.     STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 416.920. First, the claimant must not be presently working at any substantial gainful activity. 20 C.F.R. § 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* § 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 416.920(f). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 416.920(g); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the

process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.     ISSUE

Washington contends that the ALJ's decision at the fifth step of the sequential evaluation process is unsupported by substantial evidence because there is an unresolved conflict in the vocational evidence.

D.     ADMINISTRATIVE RECORD

The ALJ found that Washington had not engaged in substantial gainful activity since December 2003 and that Washington had the following severe impairments: history of left tibia compound fracture treated with metal fixation device, osteoarthritis in both knees, degenerative disc

disease of the lumbar spine, discoid lupus,[1] and a mood disorder with depressive features. (Tr. 22). After finding that disability could not be found based on Washington's medical status alone, the ALJ proceeded with an assessment of Washington's residual functional capacity (RFC) and limited him to lifting/carrying twenty pounds occasionally and ten pounds frequently; standing or walking for fifteen minutes at a time for a total of two hours in an eight-hour workday; and sitting for thirty minutes at a time for a total of six hours in an eight-hour workday. (Tr. 22-23). The ALJ also found Washington had some limitations in mental functioning, including a restriction to simple, repetitive tasks. (Tr. 23).

Vocational expert Shelly Eike testified that Washington's past relevant work had required medium to heavy exertion. (Tr. 373-74). The ALJ then asked Eike to consider a person of the same age, education, and RFC as Washington. Eike testified that none of Washington's previous work would be possible and that he had no transferable work skills; however, there would be other work that he could perform. Eike identified work as an electrical assembler (with an estimated 125,000 jobs nationally), small product assembler (with an estimated 80,000 jobs nationally), and sorter (with an estimated 40,000 jobs nationally). Eike reduced the number of jobs that existed in each occupation to account for Washington's work-related limitations. (Tr. 376-77). Based on the vocational expert's testimony, the ALJ found Washington could not perform his previous work, but was capable of performing other work existing in significant numbers in the national economy. (Tr. 25-26). Accordingly, the ALJ concluded that Washington was not disabled. (Tr. 27).

---

[1] Discoid lupus erythematosus is a chronic condition in which skin lesions mimic those of the systemic form of lupus erythematosus. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1095 (31st ed. 2007). Washington's condition has manifested itself in skin lesions that are treated with a topical medication. (Tr. 24, 306-07).

E.      DISCUSSION

Washington asserts that the ALJ failed to identify and reconcile a conflict between the vocational expert's testimony and the _Dictionary of Occupational Titles_ (DOT) and that this error renders the Commissioner's decision at Step Five unsupported by substantial evidence. Washington explains that the occupations of electrical assembler, small product assembler, and sorter are all identified as light work in the DOT, and by definition, light work demands more than two hours of standing or walking. *See* DICTIONARY OF OCCUPATIONAL TITLES 648.687-010, 729.687-010, 739.687-030 (rev. 4th ed. 1991). Thus, he argues that Eike's testimony that he could perform any of these jobs with his given RFC creates a conflict in the vocational evidence. He further asserts that he was prejudiced as a result because if his RFC relegated him to sedentary work, he would be found disabled under the Medical-Vocational Guidelines in light of his age, limited education, and lack of transferable skills.[2]  *See generally* 20 C.F.R. Part 404, Subpart P, app. 2, Table No. 1, Rule 201.10.        Social Security Ruling 00-4p addresses the use of vocational experts and other occupational information in the disability determination process. *See generally* SOCIAL SECURITY RULING 00-4p. The ruling places an affirmative duty on the adjudicator to inquire into possible conflicts between vocational expert evidence and the DOT. *See id.*  Although Ruling 00-4p reflects a policy of placing primary reliance on the DOT, the Ruling also cautions that the DOT does not automatically trump the vocational expert's evidence in cases of conflict and approves the use of vocational experts at Steps Four and Five to resolve complex vocational issues. *See id. See also*

---

[2]  If both exertional and nonexertional impairments are present, as in Washington's case, the Guidelines are directly applied only if a Guideline rule concludes that the claimant is disabled based on exertional or strength limitations alone; otherwise, the Guidelines are used merely as a framework for further evaluation of the claimant's disability.  20 C.F.R. § 416.969a(d); 20 C.F.R. Part 404, Subpart P, App. 2, §200.00(e)(2).

*Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000).

Although the ALJ stated in his decision that there were no conflicts in the vocational evidence, he did not ask the vocational expert about the consistency of her testimony with the DOT. The ALJ erred because he did not comply with Ruling 00-4p; however, procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988).

The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 416.967(b). Even though the weight lifted in a particular light job may be very little, a job is also in this category when it requires a good deal of walking or standing. *See id.* The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday, and sitting may occur intermittently during the remaining time. *See* SOCIAL SECURITY RULING 83-10.

There is some appeal in Washington's argument that there is an implicit conflict between the vocational expert's testimony and the DOT given the basic definition of light work, but closer inspection of the administrative record reveals no actual conflict that has worked to Washington's prejudice. The ALJ found that Washington retained the RFC for a limited range of light work,[3] and expressly directed the vocational expert to limit her testimony to jobs in the light category of

_____

[3] In his reply brief, Washington asserts that the ALJ did not find him capable of performing light work. The ALJ considered Washington's physical RFC on a function-by-function basis, i.e., sitting, standing, walking, and lifting, but the ALJ also recognized that this RFC represented a limited range of light work activity. (Tr. 25, 26). *See* SOCIAL SECURITY RULING 96-8p (directing that first step in RFC assessment is to assess claimant's work-related abilities on function-by-function basis and only after that assessment has been made may RFC be expressed in terms of the exertional levels of work).

exertion, which is precisely how the DOT categorizes the jobs that Eike identified. (Tr. 376). But at no point did the vocational expert indicate that she was basing her testimony on a worker capable of the full range of light work, which would exceed Washington's RFC. To the contrary, the vocational expert testified that the number of suitable jobs must be reduced because of Washington's specific work-related limitations. (Tr. 376).

The vocational expert's identification of a reduced number of jobs available at the light exertional level for someone with Washington's given RFC is not in material conflict with the DOT. Moreover, counsel was given an opportunity to question the vocational expert at the hearing, but did not challenge Eike's testimony about the exertional demands of any of the jobs she had identified. The Fifth Circuit has cautioned against allowing a claimant to scan the record for implied or unexplained conflicts between expert witness testimony and the voluminous provisions of the DOT and then present the conflict as reversible error when the conflict was not considered sufficient to merit adversarial testing during the administrative hearing. *Carey*, 230 F.3d at 146-47.

The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings, whereas a vocational expert may be able to provide more specific information. SOCIAL SECURITY RULING 00-4p. The Fifth Circuit also recognizes that the value of a vocational expert is her familiarity with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995); *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir.1986). Using that expertise, the vocational expert considered a worker of Washington's age, education, and given work-related limitations, and testified that there were at least three occupations,

each reflecting thousands of jobs, that would be compatible with this vocational profile. *See* SOCIAL
SECURITY RULING 83-12 (recognizing usefulness of vocational expert assistance where claimant's
exertional RFC does not coincide precisely with the definition of any one exertional range). The
vocational expert's testimony constitutes substantial evidence that Washington is capable of
performing other work existing in significant numbers in the national or regional economy, which
satisfies the Commissioner's burden at Step Five of the sequential evaluation process. The ALJ's
failure to comply with his affirmative obligation under Ruling 00-4p did not result in prejudice to
Washington's substantial rights.

<u>RECOMMENDATION</u>

It is recommended that the Commissioner's decision be affirmed.

<u>NOTICE OF RIGHT TO OBJECT TO PROPOSED
FINDINGS, CONCLUSIONS AND RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT</u>

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific
written objections in the United States District Court to the United States Magistrate Judge's
proposed findings, conclusions and recommendation within ten (10) days after the party has been
served with a copy of this document. The court is hereby extending the deadline within which to
file specific written objections to the United States Magistrate Judge's proposed findings,
conclusions and recommendation until February 13, 2009. The United States District Judge need
only make a *de novo* determination of those portions of the United States Magistrate Judge's
proposed findings, conclusions and recommendation to which specific objection is timely made.
*See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a

proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

<u>ORDER</u>

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until February 13, 2009, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED JANUARY 23, 2009.


    /s/   Charles Bleil                
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE